## BOND ET AL. vs. MUNRO.

The act of 1858, " to make uniform the decisions of the Supreme Court of this State, to regulate the reversals of the same, and for other purposes," is, if constitutional, only prospective in its operation.

Bond et al. vs. Munro.

In Equity, in Lee Superior Court.   Tried before Judge ALLEN, at March Term, 1859.

An action of ejectment was brought against the defendant in error for lot No. 14 in the 2nd district of Lee county, at the instance of James Bond, in the names of Ransom Cain and James Morris.   At the trial on the appeal the case turned on the question whether a deed made by Cain to Morris, and one by Morris to Bond were void under the statute.—32 Henry 8th, ch. 9th.   Judge Allen held the deeds to be void if executed while defendant was in adverse possession, and the jury found for the defendant.   The plaintiffs in ejectment carried the case to the Supreme Court, and it came on to be heard at June Term, 1857, (see 23 Ga. Rep. 82) when a majority of the court (Judge Lumpkin dissenting) held that the statute 32 Henry 8th, ch. 9th, was not of force in this State, and granted a new trial.   After the new trial was awarded by the Supreme Court, the legislature passed an act to make uniform the decisions, by which it was enacted that, "From and after the passage of this act the decisions "of the Supreme Court of this State which may have "been heretofore or which may hereafter be made by a "full court, and in which all three of the judges have or "may concur, shall not be reversed, overruled or changed; "but the same are hereby declared to be and shall be con- "sidered, regarded and observed by all the courts of this "State as the law of this State, where they have not been "changed by the legislative enactment, as fully and to "have the same effect as if the same had been enacted in "terms by the General Assembly."

This act was assented to, the 9th of December, 1858.

On the 14th December, 1858, a compromise was made of the ejectment suit between Munro, and Lanier & Anderson, attorneys-at-law for James Bond.   Munro gave his note for $2000 to the attorneys, payable to Bond, and

Bond et al. vs. Munro.

the attorneys, for bond, agreed that Bond should give to Munro a quit claim deed for the lot in dispute, and that a verdict in the ejectment suit was to be given for Munro.

Afterwards Munro filed this bill in equity to set aside said agreement and to have his note cancelled or returned to him.

The bill charges that Bond and his attorneys knew of the passage of the law of 1858 and concealed it from complainant and thus entrapped him into this settlement.

The bill alleges that complainant sold his plantation, including the lot in dispute, to Willis A. Jones, and that for this lot Jones gave his conditional note for $2531 25, and that Munro turned over this conditional note to Lanier & Anderson, as collateral to his own note for $2000.

The bill prays that the agreement of compromise may be cancelled and the notes returned to him, and Bond may be enjoined from trading the notes. The bill was sanctioned and the injunction prayed for granted. The defendant Bond answered the bill. His answer denies that the compromise was brought about by the superior knowledge of himself or his attorneys. That the law was a public one, and complainant had as full opportunity of being informed as defendant, and it was not the duty of defendant to inform complainant as to the law, or what his rights might be under it. The other defendants answered the bill, but their answers are not material to the question upon which the case turned. There was a demurrer to the bill and a motion to dissolve the injunction. Judge Allen overruled the demurrer and refused to dissolve the injunction, and defendant excepted. Lanier & Anderson filed in the court below their affidavits denying any imposition upon complainant and also denying that they knew or had heard of the passage of the act of 9th December, 1858, previous to the compromise with complainant.

Bond et al. vs. Munro.

McCay & Hawkins, for plaintiff in error.

Vason & Davis, *contra.*

*By the Court.*—Benning, J., delivering the opinion.

Did the court below err in overruling the demurrer? We think so.

If there is any equity in the bill, that equity is due to the act of the legislature, referred to in the bill. This proposition may be assumed. That act is in the following words:

"AN ACT to make uniform the Decisions of the Supreme Court of this State; to regulate the reversals of the same, and for other purposes.

Sec. 1. Be it enacted, That from and after the passage of this act, the decisions of the Supreme Court of this State, which may have been heretofore, or which may hereafter be made by a full court, and in which all three of the judges have or may concur, shall not be reversed, overruled or changed; but the same are hereby declared to be, and shall be considered, regarded and observed by all the Courts of this State, as the law of this State, where they have not been changed by the legislative enactment, as fully,.and to have the same effect, as if the same had been enacted in terms by the General Assembly.

Sec. 2. Repeals conflicting laws.

Approved, December 9th, 1858."

Can the bill derive any aid from this act? The plaintiffs in error say no. They say, first, that the act is unconstitutional; secondly, that, if not unconstitutional, it is only prospective in its operation, and, therefore, that it does not apply to this case.

We think it true that the act is only prospective in its operation, and, therefore, that it does not apply to the case. Whether it is not also unconstitutional, is, therefore, a question which need not be considered.

Bond et al. vs. Munro.

It is a general rule, in the interpretation of statutes, that they are to be so interpreted, that they shall not affect any case that was in existence before their passage, unless they expressly, or, by necessary implication, mention that case. This statute does not expressly, or by necessary implication, mention any case that was in existence before its passage. It, on the contrary, may easily and naturally be taken as referring only to cases that might arise subsequently to its passage. The sense of the statute may with ease be taken to be this—that decisions made, or to be made, by a full court, shall, from and after the passage of this statute have the force of legislative enactments, until the legislature interposes and says that they shall not have that force. The decisions are to have this force from and after the passage of the statute. Therefore, even those of them that were made before the passage of the statute, are not to have this force from the time when they were made, but only from the time when the statute was made. For example, take the decisions made by a full court, that this statute of Henry the 8th is in force. They were decisions made before the passage of this statute.

The operation of the statute, on those decisions, is, to make them legislative enactments, from and after the passage of the statute, not from and after the date of the decisions. The operation is just what it would have been if the language of the statute had been this: "The statute of Henry the 8th (or certain parts of it) shall, from and after the passage of this act, be in force." Would any one say, that a retroactive operation for the statute could be got out of such language as this? So, neither can such an operation be got out of language, only the equivalent of this. We think, then, that this statute has no application to this case, for this case arose before the passage of the statute.

Judgment reversed.