(39 Misc. Rep. 618.)

## In re JENKINS' WILL.

(Surrogate's Court, Oneida County. January, 1903.)

1. WILLS—TESTAMENTARY CAPACITY—DELUSION.
    Where a testator gave his dependent wife, to whom he had been married for 30 years, only the income for life on $1,000, and gave the rest of his property, amounting to $6,000, to his next of kin and charities, probate of the will will be denied, on evidence that during nearly all of such married life he had been under a delusion in regard to the fidelity of his wife, based upon no sufficent grounds.

Proceedings for the probate of the will of David Jenkins. Probate denied.

Frederick H. Hazard, for proponent, George C. Hazard.
Thomas S. Jones, for contestant, Mary A. Jenkins.
John E. Brandagee, for House of Good Shepherd.
Henry A. Davis, for Utica Orphan Asylum.
H. J. Cookinham, special guardian.

CALDER, S. David T. Jenkins, the testator, died in the city of Utica, on or about the 4th day of October, 1901, being about 68 years of age, and leaving a last will and testament, dated the 3d day of June, 1899, in which he sought to dispose of an estate of the value of about $7,000, consisting entirely of personal property. His widow at the time of his death was about 65 years of age. They had four children, all of whom died in infancy. His next of kin are two sisters, a brother, nieces, and nephews. The only legacy he bequeathed to his wife was the income upon the sum of $1,000 during her natural life. Practically one-half of his estate is given in equal portions to the House of the Good Shepherd of Utica, N. Y., and the Utica Orphan Asylum, and the other half is given to certain relatives and friends. The will is contested by his widow upon the ground that testator did not possess testamentary capacity to execute it. It was not claimed that he was insane upon all subjects, but that he had a delusion as to his wife's infidelity, and that such delusion entered into and controlled his testamentary act. He was able to talk in a rational way upon subjects in general, and took an intelligent part in certain business transactions. At different times he held positions of trust in his town. A man may have a delusion, and still possess testamentary capacity, provided, however, that the will is not the offspring of such delusion.

In the trial of this case a great amount of evidence was taken, and it is not deemed necessary to analytically discuss it. At the time of the execution of this instrument offered for probate, decedent and his wife had been married nearly 30 years, and for a greater portion of that period they lived upon a farm in the town of Marcy, his wife assisting in the usual duties of household work; and, from the evidence, it is fair to presume she did her full share towards ac-

cumulating some of the estate herein sought to be disposed of. Shortly after their marriage he began to talk with neighbors and friends about his wife's infidelity, and, up to the time of his death, made untrue allegations as to her character. The evidence emphasizes the fact, however, that during her entire life in the neighborhood where she lived her reputation for chastity was good, and no suspicions were held against her. Untrue reports were circulated only by her husband. People with whom he talked endeavored to persuade him that he was mistaken, and insisted that his accusations against his wife were the creations of his own imagination; but, in opposition to evidence and argument, he asserted in positive terms that his wife was guilty of immoral acts. A person has a delusion who believes that a certain state of affairs exists which in fact does not, and which can only be accounted for as the result of a perverted imagination, without cause or evidence. This was substantially held by this court in Matter of Lapham, 19 Misc. Rep. 77, 44 N. Y. Supp. 90. Bouvier defines a "delusion" as "a diseased state of mind in which persons believe things to exist which exist only, or in the degree they are conceived of only in their own imaginations, with a persuasion so fixed and firm that neither evidence nor argument can convince them to the contrary." In Seaman's Friend Society v. Hopper, 33 N. Y. 624, it is said:

"If a person persistently believes supposed facts, which have no real existence, except in his perverted imagination, and against all evidence and probability, and conducts himself, however logically, upon the assumption of their existence, he is, so far as they are concerned, under a morbid delusion; and delusion in that case is insanity. Such a person is essentially mad or insane on those subjects, though on other subjects he may reason, act, and speak like a sensible man."

Applying these definitions to the facts in this case, it cannot be argued that testator had a mistaken belief or an unreasonable prejudice. It went beyond these. It was an insane delusion. A will should be set aside where it is the offspring of, or its execution is controlled by, a delusion or delusions. In Riggs v. American Tract Society, 95 N. Y. 503, it was held that it was sufficient to show that the donor was laboring under a delusion, out of which he could not be reasoned, which led him to make the gift in question and which so took possession of his mind that he could not act upon the subject sensibly. In Matter of Gannon, 2 Misc. Rep. 333, 21 N. Y. Supp. 960, the will was set aside by the jury and the judgment affirmed by the appellate court. The concluding portion of the opinion is as follows: The "jury found that Gannon had general testamentary capacity, was not a monomaniac on all subjects, but had an insane delusion affecting the will in question, and was a maniac on that subject, and that such mania influenced the making of the will. That conforms to the rule in this state." Matter of Loewenstine, 2 Misc. Rep. 323, 21 N. Y. Supp. 931, Matter of Dorman, 5 Dem. Sur. 112, Matter of Lockwood, 2 Con. Sur. 118, 8 N. Y. Supp. 345, and Matter of Kahn, 1 Con. Sur. 510, 5 N. Y. Supp. 556, were cases where

wills were set aside on the theory that delusions affected their execution.

The authorities referred to by counsel for proponents have been carefully examined, and, no doubt, the proper conclusions are therein drawn from the facts presented. There is no precise rule, however, which can govern all cases where testamentary capacity is involved. Each case must be determined by its own facts. Here the testator willed from his wife substantially his entire estate. She had no means of her own, which he well knew. She was dependent upon his bounty. It cannot be argued from the evidence herein, with any reason, that he should give practically his estate to charitable institutions, relatives, and friends, and bequeath to his wife, for her support and maintenance, the income upon $1,000 a year—a sum grossly inadequate to supply her with the necessaries of life—unless his delusion controlled him when he executed the instrument in question. The false statements he uttered and circulated, the shameful epithets he applied to her, and the beliefs he entertained, were the result of the delusion which possessed his mind, directed his testamentary act, and conceived the testamentary provisions which deprived her of the bounty which rightfully belonged to her. Taking the evidence in its entirety, no other conclusion, in my judgment, should be reached. A decree denying probate should therefore be entered.

Probate denied.