DIBBLE *et al. v.* CURRIER, executor.

1. A caveat to the propounding of a will alleged, that the testatrix made an unfortunate marriage; that her husband deserted her, and she obtained a divorce from him; that she brooded so much over the unhappy events and outcome of the marriage that her mind became unbalanced and incapable of ratiocination with reference to it and events associated with it or arising from it; that, under an insane delusion with reference to the relationship and the continuation of the affection between herself and her heirs at law, she sought to have her former husband killed or maimed by them, and, because of their refusal to comply with such request, she became imbued with the hallucination that they were not of her blood or family, were not related to her, and were not entitled to her affection and treatment as kinsmen; that she became possessed of an insane delusion that she was disgraced in the eyes of the community by her relatives, because they would not maim or kill her former husband; that she was mistaken as to their condemning her or not sympathizing with her, and in believing that they did not condemn

her former husband; that they assured her of that fact, but she was possessed of the insane hallucination that nothing short of the maiming of her former husband would relieve her of the supposed contempt in which she thought she was held because of her unfortunate marital experience and because her heirs at law refused to comply with her request; and that, because her heirs at law refused to violate the law at her demand, under the influence of said insane delusion she conceived and maintained a wholly insane and mistaken idea as to their conduct in the matter and as to their relations and feelings toward her; and that this delusion existed prior to and at the time of the making of the will and caused her to make it, leaving a large part of her property to different charities instead of to her next of kin. *Held,* that such allegations sufficiently averred monomania to withstand a demurrer.

2. Allegations to the effect that the testatrix desired to have her male relatives maim or kill her former husband, and to have her female relatives urge them so to do, that because they refused to do so she believed that she was disgraced in the eyes of the community by them and that they did not sympathize with her but with her former husband, and were prompted thereby in refusing her request, and that this constituted a mistake of fact as to the conduct of the heirs at law, were subject to demurrer. Such allegations amounted only to alleging erroneous inferences or conclusions drawn by the testatrix from their refusal to comply with her illegal request.

DECEMBER 18, 1914.

Probate of will. Before Judge Ellis. Fulton superior court. November 13, 1913.

*Rosser & Brandon* and *King & Spalding,* for plaintiffs in error. *Westmoreland Brothers* and *C. P. Goree,* contra.

LUMPKIN, J. A will was propounded and a caveat filed by the heirs of the decedent. The case was carried from the court of ordinary to the superior court by appeal. The grounds of the caveat as amended, which set up monomania and mistake of fact on the part of the testatrix, were stricken on demurrer, and a verdict for the propounder was directed. The case turns on the striking of the grounds of the caveat.

1. The medico-legal discussions of monomania as distinguished from prejudice, animosity, ill will, bad judgment, drawing conclusions from insufficient premises or erroneous conclusions from facts —all of which may coexist with sanity—are often apt to confuse rather than enlighten the lay mind, and sometimes the professional mind. Our code recognizes such a thing as monomania as affecting testamentary capacity. Civil Code (1910), § 3840. But it means a mental disease, not merely the unreasonable conduct of a sane person. It is a species of insanity. Mania is a form of in-

sanity accompanied by more or less excitement, which sometimes amounts to fury. The person so affected is subject to hallucinations and delusions, and is impressed with the reality of events which have never occurred and things which do not exist, and his actions are more or less in conformity with his belief in these particulars. Hall v. Unger, 11 Fed. Cas. 261, 263. This mania may extend to all objects; or it may be confined to one or a few objects, in which latter case it is called monomania. It is not every delusion which will deprive one of testamentary capacity. It must be an insane delusion. A definition of such a delusion which has been approved by this court is that it exists wherever a person conceives something extravagant to exist which has no existence whatever, and he is incapable of being permanently reasoned out of that conception. *Bohler* v. *Hicks,* 120 *Ga.* 800, 804 (48 S. E. 306). The subject-matter of the insane delusion must have no foundation in fact, and must spring from a diseased condition of mind. It does not mean merely a mistaken conclusion from a given state of facts, nor a mistaken belief of a sane mind as to the existence of facts. Probably all men believe some things on slight evidence or that which is insufficient to prove the facts with any degree of certainty. But a bad reasoner, even one wanting in ordinary discernment or discrimination, is not necessarily insane. All men make some mistakes, and some men make almost constant mistakes. But this alone does not constitute insanity. Who is devoid of some prejudice? Some men are full of prejudices, and are largely governed by their likes and dislikes, often with little or no proper basis. But if mistakes, prejudices or dislikes, though unjust, would suffice to show insanity, how many men could make a will?

One who investigated the subject of spiritualism and became convinced and believed in it, though apparently on spurious or insufficient evidence, was held not to be a monomaniac for that reason. Middleditch v. Williams, 45 N. J. Eq. 726 (17 Atl. 826, 4 L. R. A. 738). Mere jealous suspicions, though groundless, are not enough. The test to distinguish between a delusion used in the sense of a mistake of fact, and a delusion which is the offspring of a deranged mind, is thus stated by Mr. Justice Evans in *Bohler* v. *Hicks,* supra: "The latter springs spontaneously from disordered intellect, while the former is the result of an erroneous conclusion based upon either a mistake of fact or an illogical deduction drawn

from facts as they really exist." Again he says: "The very name 'monomania' implies partial insanity and excludes the idea of any sort of ratiocination as to the particular subject to which the partial insanity relates. Monomania can not be implied because a person takes a narrow, or prejudiced, or utterly illogical view of a particular subject." Tested by these views, how stands the case before us? The allegations on this subject, contained in the caveat as amended, were in substance as follows: The testatrix married one Garner, with whom she lived very unhappily, and from whom she was divorced after he had deserted her. She brooded over the unhappy events and outcome of her marriage, "and so brooded and worried over the same that her mind became unbalanced and incapable of ratiocination with reference to said marriage, and events associated, or arising therefrom, and especially with reference to relationship and the continuation of the affection between herself and said heirs at law; that, seized by said insane delusion, the said deceased, Barbara C. Dodd, sought the death or maiming of the said Garner, and requested the said heirs at law that they would maim or kill the said Garner; and, because of their refusal and failure to comply with such insane request, she stated and became imbued with the hallucination that said heirs at law who refused to comply with her said insane desires were not of her blood or family, were not related to her, and were not entitled to her affection and treatment as kinsmen; that said insane delusion had no foundation in fact, but sprang from the diseased condition of her intellect, and was the inducing cause of the exclusion of said heirs at law from the benefits of said pretended will, which is therefore inoperative and void as to them." It was also alleged that this condition existed prior to and at the time of the making of the will, and continued until the death of the testatrix. In an amendment it was alleged, that her marital troubles rendered the testatrix insane on all subjects connected with her marital experiences; that she was irrational whenever she acted under the influences thereof; that she became possessed of an insane delusion that she was disgraced in the eyes of the community by her relatives, because they would not assail Garner and either permanently maim him in some physical manner or kill him, and that their failure to do this was due to their condemning her in the matter, and placed her in a disgraced position before the community and the public; that she was entirely

mistaken in this matter, and that they assured her of their sympathy and condemnation of Garner, but she was possessed of the insane hallucination that nothing short of a physical maiming of him at their hands would relieve her of the supposed contempt in which she thought she was held; that, under the influence of this insane delusion and insane and irrational dislike and hatred for the caveators, she conceived and maintained a wholly insane and mistaken idea as to their conduct, and as to their relations and feelings toward her; and that this delusion caused the testatrix to make the will.

We think that the averments of the caveat measured up to the requirements laid down in *Bohler* v. *Hicks,* supra. The allegations that the mind of the testatrix became unbalanced and incapable of reasoning with reference to her marriage and the events associated with or arising from it, that she became imbued with the hallucination that her heirs, who refused to comply with her insane desires, were not of her blood or family, were not related to her, and were not entitled to her affection or treatment as kinsmen, go beyond allegations of prejudice, passion, illogical reasoning, unfounded suspicion or the like, and set up an actually diseased condition of the mind, and delusions arising therefrom,—in other words, partial insanity or monomania. These allegations are of course to be treated as true for the purpose of the demurrer; and so treating them, it was error to sustain the demurrer as against them. Whether in fact there were insane delusions springing spontaneously from a disordered intellect, or merely erroneous conclusions based upon a mistake of fact, or illogical deductions from actual facts, groundless suspicion, or unjust dislikes or prejudices, will be for determination of the jury, under the evidence adduced at the trial. All that is now held is that the allegations in regard to monomania should not have been stricken on demurrer.

2. Another ground of the caveat was based on the allegation that the testatrix, in making the will, was governed by a mistake of fact. On this subject the caveators alleged in substance as follows: Prior to the making of the will the testatrix had contracted a marriage with one Garner, which resulted unhappily. He deserted her for another woman. She labored under the mistake that she was disgraced in the eyes of the community by her relatives, because they would not assail and either permanently maim him in some physical manner or kill him, and that their failure to do

so was due to their condemning her in the matter, and placed her in a disgraced position before the community and public. She sought to have her male heirs to make such an attack, and her female heirs to insist that the male heirs should do so. She was entirely mistaken as to their condemning her, or as to their not sympathizing with her, and also in believing that they did not condemn Garner. They did condemn him and did not blame her. She falsely believed that, in refusing to maim or kill Garner, they were prompted by, or their conduct was the result of, an approval by them of him and a condemnation of her. This mistake existed prior to the making of the will, and up to the time of the death of the testatrix, and caused her to make the will.

These allegations were insufficient to show a mistake of fact. They set out, in effect, that the testatrix had been deserted by her husband; that she sought to have her relatives wreak vengeance upon him by killing or maiming him; and that, because they did not comply with her request on that subject, she drew the erroneous conclusion that they did not sympathize with her but with her husband, and that this conduct on their part disgraced her before the community. It was not a case of failure to know the basal facts, or of a mistake in regard to any act or conduct. Her conclusion, from the refusal of her relatives to commit violence at her request, that their sentiments were hostile to her, may have been illogical or unsound. But this did not amount to a mistake of fact in a legal sense. It is an every-day occurrence that some person asks a favor of another, and, if refused, declares that the latter person is not his friend. This may be a mistake in reasoning from facts, but does not itself constitute a mistake of fact in the legal acceptation of the term. As was declared in *Young* v. *Mallory,* 110 *Ga.* 12 (35 S. E. 278): "There is a difference between a 'mistake' arising from mere ignorance and one which results from an error of judgment after investigation or from negligence or wilful failure to make a proper investigation by means of which the truth could be readily and surely ascertained. It is to such a mistake as that first indicated that section 3262 [now § 3836] applies." That section declares that "A will executed under a mistake of fact as to the existence or conduct of the heirs at law of the testator is inoperative, so far as such heir at law is concerned, but the testator shall be deemed to have died intestate as to him." In the case just cited,

a testator knew that a certain woman claimed to be his niece and nearest of kin, and that she was the daughter of his deceased brother. The testator stated that he had been informed that she was not his niece, and he came to the conclusion that this was true. It was held that this did not amount to a mistake of fact, although he may have come to a wrong conclusion. In *Bohler* v. *Hicks,* supra, the mistake of fact alleged was that the testator falsely supposed that his wife advised or attempted to procure another to kill him, and also that he falsely believed that acts of kindness on her part toward one Bohler were the result of improper intimacy between her and such person. In *Franklin* v. *Belt,* 130 *Ga.* 37 (60 S. E. 146), the mistake of fact alleged was that the testatrix falsely believed that her husband intended to deprive her of the possession, custody, and control of her infant daughter. It will readily be seen that such mistakes of fact differ from that sought to be set up in the present case, where the testatrix endeavored to induce her heirs at law to commit an act of violence, and, upon their refusal to comply with her request, inferred or believed that they were not in sympathy with her but with the person whom she sought to have injured. This ground of the caveat was properly stricken on demurrer.

*Judgment affirmed in part, and reversed in part.* All the Justices *concur, except Fish, C. J., absent.*