ATLANTA & WEST POINT RAILROAD CO. *v.* HEMMINGS.

No. 13859.   September 12, 1941.

*Heyman & Heyman* and *Stanford Arnold,* for plaintiff in error.
*Stonewall H. Dyer* and *A. H. Freeman,* contra.

Grice, Justice.   The argument of plaintiff in error as to why this court should entertain jurisdiction of the writ of error is this: Certain full-bench decisions of this court, which are pointed out, laying down the principle of law that ordinarily it is a question for the jury to determine whether or not it is negligence on the part of the engineer under the circumstances stated, are violative of certain provisions of the constitution of the United States; that under the act approved December 9, 1858 (Acts 1858, p. 74), it was enacted that decisions of this court in which all of the three Judges concurred are declared to have the same effect as if the same had been enacted by the General Assembly; that the act approved December 17, 1896 (Acts 1896, p. 42) relating to the organization, etc., of this court after the adoption of the constitutional amendment increasing the number of the Justices did not repeal, nor has any other enactment repealed, the act of 1858; that this

court has declared in *Bond* v. *Munro*, 28 *Ga.* 597, that the effect of the act of 1858 on the full-bench decisions therein referred to was to make them legislative enactments, and in *Lucas* v. *Lucas*, 30 *Ga.* 191, 202 (76 Am. D. 642), as converting such decisions into statutes, and in *Heard* v. *Russell*, 59 *Ga.* 25, 54, until deliberately reviewed and overruled, as being as binding as an act of the legislature; that hence a constitutional attack on the unanimous decisions of this court, having the effect of statutory law, brings the case for that reason within the jurisdiction of this court.

Under article 6, section 2, paragraph 5, of the constitution of this State (Code, § 2-3005), this court can not entertain this writ of error unless it be a case in which the constitutionality of a law of the State is drawn in question. So far as pertinent to the issue here presented, that paragraph of our organic law above cited gives this court jurisdiction only "in all cases in which the constitutionality of any law of the State of Georgia or of the United States is drawn in question." We are asked to give to the words "any law of the State" in the sentence next above a meaning which would include any full-bench decision of this court which has not been formally reviewed, and upon such review overruled, in the manner pointed out in the Code, § 6-1611. As will be seen from a synopsis of the argument in support of that view, which is set forth at the beginning of this opinion, it rests primarily on the act of 1858, supra. That act, omitting the formal parts, is as follows: "Be it enacted, that from and after the passage of this act the decisions of the Supreme Court of this State, which may have been heretofore or which may hereafter be made by a full court, and in which all three of the Judges have or may concur, shall not be reversed, overruled, or changed; but the same is hereby declared to be, and shall be considered, regarded, and observed by all the courts of this State, as the law of this State, when it has not been changed by legislative enactment, as fully, and to have the same effect, as if the same had been enacted in terms by the General Assembly."

In a paper which exhibits much research and contains references to and extracts from many documents which illuminate the subject, read before the Georgia Bar Association, Honorable Joseph R. Lamar, who had theretofore graced the bench of this court and who was thereafter to adorn that of the highest court of the republic, traced the history of the establishment of the Supreme Court

of Georgia. Report of the 24th Annual Session of the Georgia Bar Association, 1907, pages 85 et seq. It is there made plain that one of the prevailing reasons for its creation was to secure certainty and uniformity in the administration of the law, and to prevent the confusion produced by contemporary contradictory decisions. The most salutary rule that leads to that desired end is that known as stare decisis.

The act of 1858, supra, did not undertake to enact into one statute all of the decisions of this court in the sense that this was done by the General Assembly in adopting the Code (see *Central of Georgia Railway Co.* v. *State,* 104 *Ga.* 831, 31 S. E. 531, 42 L. R. A. 518), so as to make the decision itself a "law of the State of Georgia" as those words are used in that part of the constitution defining the jurisdiction of this court. The act of 1858 merely declared what the legal effect of these decisions was to be, and recognized them to be on the same plane "as if the same had been enacted in terms by the General Assembly." The effect of this act was to emphasize and crystallize what this court had already said concerning its decisions. In *Thornton* v. *Lane,* 11 *Ga.* 459, 490, Lumpkin, J., afterwards Chief Justice, after referring to the fact that the case had been reargued, at which time there were eight elaborate arguments, occupying more than as many days, on questions some of which had never been disputed and most of them theretofore solemnly adjudicated by this court, said: "We need not say, however, that when questions have been once decided by this court, they are to be considered as the law of the land, and respected and carried into full effect as such, the same as a statute of the State; and that we will not in future entertain a writ of error at the instance of the same party, except by leave, involving points which have been already distinctly settled. And this license will be grudgingly granted, appreciating, as we do, the importance of having it understood that the law is *stable.* It is only in *extreme cases* that a court in the last resort should permit its judgments to be drawn into controversy. The doctrine of *stare decisis* is right, both upon policy and principle."

The act of 1858, supra, contains no exception as to those decisions which the court itself may review and overrule. The codifiers of our first Code inserted a provision that "A decision concurred in by three Judges can not be reversed or materially changed, except

by a full bench, and then after argument had, in which the decision by permission of the court is expressly questioned and reviewed, and after such argument the court in its decision shall state distinctly whether it affirms, reverses or changes such decision." Code of 1863, § 210. This was carried forward in the Code of 1882 as section 217. The act reorganizing this court under the constitutional amendment of 1896 made only the following reference to that section: "That the law now embodied in section 217 of the Code of 1882, which declares that a decision concurred in by three Judges can not be reversed or materially changed, except by a full bench, be and the same is hereby amended by striking therefrom the words just quoted, and inserting in their stead the following words to wit: 'A decision rendered by the Supreme Court prior to the first day of January, 1897, and concurred in by three Judges, or Justices, can not be reversed or materially changed except by the concurrence of at least five Justices.' Unanimous decisions hereafter rendered by a full bench of six Justices shall not be overruled or materially modified except in the manner pointed out in said section, and then only with the concurrence of six Justices." Georgia Laws 1896, p. 42-45, sec. 5. This is now embodied in the Code of 1933, § 6-1611. So that to-day a decision is not so binding but that it may be reviewed and overruled in the manner pointed out.

The position of counsel for the plaintiff in error would seem to logically lead to this: Either that this court, notwithstanding the provisions of the Code, § 6-1611, can not review and overrule and refuse to follow a prior decision because of the act of 1858; or else that this court has jurisdiction of a writ of error such as that in the instant case, to wit, a suit for damages and nothing else, on the ground that the pleadings attack as unconstitutional a prior decision of this court, treating such decision as a law of the State within the meaning of the constitution, art. 6, sec. 2, par. 5 (Code, § 2-3005), although this court has the power not to follow the decision complained of, or not to treat it as law, if in its judgment it should upon review be overruled. The phrase "any law of the State," as used in the constitutional provision cited above, means a legislative enactment. It has no reference to such a "law" as the court itself laid down and which it may ex proprio vigore alter, amend, or repudiate and declare no longer to be binding as a precedent. If any

other view were to prevail, it would in our opinion be necessary to ascribe to the words "any law of the State of Georgia" a significance never contemplated by those who sponsored and framed the amendment to the constitution containing the provision in which they occur, or by the legislators who submitted it to the people for their rejection or ratification, or the voters who adopted it.

*Transferred to the Court of Appeals. All the Justices concur.*