SMITH *v.* THE STATE.

No. 14625.   SEPTEMBER 9, 1943.   REHEARING DENIED OCTOBER 3, 1943.

*E. L. Grantham* and *McDonald & McDonald,* for plaintiff in

error. *T. Grady Head, attorney-general, Dave M. Parker, solicitor-general,* and *L. C. Grove, assistant attorney-general,* contra.

GRICE, Justice. ▮▮▮ Nothing additional will be said here on the rulings made in the first ten headnotes.

▮▮▮ The defendant made no statement. Certain non-expert witnesses were introduced to testify as to his sanity or insanity, some expressing the view that in their opinion he was insane, and others that he was sane.

The recital appearing above, of the evidence concerning the homicide, justifies the statement in the brief of counsel for the plaintiff in error, to wit: "There was practically no dispute as to the circumstances of the killing, nor the manner; there being no evidence as to the actual killing other than that introduced by the State, and that showed a brutal, uncalled-for, unprovoked killing. The contention made for the defendant was that the defendant did not have sufficient mind to know the difference between right and wrong." There was nothing in the evidence to suggest the defense of delusional insanity. An examination of the charge shows that the judge fully and correctly charged the principles of law applicable to the defense of insanity in criminal cases, in giving the general rule of criminal responsibility as measured by the ability to distinguish between right and wrong in connection with the particular act. This was in reality the only defense urged by the accused. The court, having instructed the jury that if he had reason sufficient to distinguish between right and wrong in relation to the particular act about to be committed, the law would hold him responsible therefor, then in immediate sequence gave the accused the benefit of a principle of law to which he was not entitled, to wit, the law of delusional insanity. And we are asked to reverse the judgment on that account.

In *Caison* v. *State,* 171 *Ga.* 1 (154 S. E. 337), it was said that the trial judge, after instructing the jury that if the defendant was not mentally capable of distinguishing between right and wrong he should be acquitted, or if the jury had a reasonable doubt as to this he should be given the benefit of that doubt and acquitted, immediately added: "If on the contrary . . you should believe the defendant committed the act charged against him in this bill of indictment, and in the manner therein alleged, and that at the time of its commission he was not mentally incapable of distin-

guishing between right and wrong with reference to such act, but at the time of the commission of said act he was mentally capable of distinguishing between right and wrong with reference to such act, and was not irresistibly impelled to its commission by reason of any mental disease, he would not be excusable for the same on the ground of mental disease or insanity." The defendant excepted to that portion of the instruction contained in the words, "and was not irresistibly impelled to its commission by reason of any mental disease," etc. In dealing with that exception this court said: "Under the defense of insanity set up by the defendant, the above instruction, which is pertinent to cases of delusional insanity, was not applicable, and put upon the defendant, in sustaining his defense of insanity, a greater burden than that imposed by law; and for this reason the court erred in giving such instruction. Under the defense of delusional insanity such instruction would be applicable; but it should not be given as part of an instruction upon insanity generally. Such commingling of an instruction upon delusional insanity with a correct charge upon insanity generally tended to confuse and mislead the jury, and left them to apply the rule applicable to delusional insanity generally."

That opinion was by four Justices only. It seems to us that this court reached the wrong conclusion in that case, and that all the trial court there did was to give the prisoner the benefit of an additional defense to which he was not entitled under the record. We do not challenge the soundness of the proposition there laid down, that when the judge so charges the law of general insanity with that of delusional insanity as to commingle the two in a manner that is confusing to the jury, and in a way that puts an additional burden on the accused, harmful error is committed; but in our opinion the charge in the *Caison* case was not confusing, nor did it place an extra burden on the accused. In that case, however, the trial judge did not, as in the instant case, after charging on the law of general insanity, leave that subject, and then separately charge on delusional insanity, treating the latter defense as an exception to the general rule. The court was then of the opinion that two instructions on these two branches of the law of insanity were so commingled as to confuse and mislead the jury, and that the instruction on delusional insanity put upon the defendant in order to sustain his defense of insanity a greater burden

than that imposed by law. There was nothing confusing in the manner of charging delusional insanity in the record now before us. To charge the law generally applicable to the defense of insanity in criminal cases, mentioning the usual test, which is the ability to distinguish between right and wrong, and after having instructed the jury that if a person has reason sufficient to make such distinction in relation to the particular act about to be committed he is criminally responsible, and then to expressly state to the jury that there is an exception to this general rule, and then to charge them on the law of delusional insanity, is not the putting of any extra burden on the defendant to sustain his defense of general insanity, but simply offers to him still another defense of a kindred nature.

In *Davis* v. *State*, 190 *Ga.* 100 (8 S. E. 2d, 394), the trial judge, after giving the correct principle of law applicable generally to the defense of insanity in criminal cases, charged the jury as follows: "An exception to this rule is where a man has reason sufficient to distinguish between right and wrong as to a particular act about to be committed, yet, in consequence of some delusion, his will is overmastered and there is no criminal intention; provided that the act itself is connected with the peculiar delusion under which the prisoner is laboring. This, gentlemen, is a question of fact to be determined by you. If you should believe that the defendant had reason sufficient to distinguish between right and wrong relative to the particular act charged against him in the bill of indictment, and that he actually committed the act, but that at the time of its commission, in consequence of some delusion with which the act itself was connected, his will was overmastered, and there was no criminal intention on the part of the defendant with reference to such act, then you should acquit the defendant." And after in effect repeating that sentence, he added: "In other words, gentlemen, if you believe that the defendant had sufficient reason to distinguish between right and wrong with reference to the act charged against him, he may nevertheless not be legally responsible therefor, if by reason of a delusion or mental disease he had so far lost the power to choose between right and wrong and avoid the doing of the act in question as that free agency was at the time destroyed; provided that the alleged crime was so connected with such mental disease in relation to cause and effect as to have been the product

of it solely. If, on the other hand, you believe beyond a reasonable doubt that, if the defendant committed the act therein charged, and that at the time of its commission he was not suffering from such mental infirmity as to render him incapable of distinguishing between right and wrong with reference to such act, and his will was not overmastered in consequence of some delusion connected with said act, so as to render him powerless to choose between right and wrong with reference to said act and to avoid the doing of the act in question, then he would be legally accountable for the same, under the rules and instructions given you." This court ruled that the charge on delusional insanity did not constitute reversible error, since it merely gave to the defendant the benefit of an additional defense, and could not have misled the jury as to the defense upon which he expressly relied. The *Davis* decision had the approval of the entire bench; whereas the *Caison* decision did not. We follow the *Davis* case, and rule that, although in the present case there was no evidence of delusional insanity, the charge on that subject, looking to the entire record, was not an error of which the accused can justly complain.

The evidence authorized the verdict, which was approved by the court, and there was no error in refusing a new trial.

*Judgment affirmed. All the Justices concur, except Bell, C. J., not participating.*

### ON MOTION FOR REHEARING.

Counsel for the plaintiff in error insist that the *Caison* case, supra, is in contemplation of law, and of section 6-1611 of the Code, "a unanimous decision rendered . . by a full bench of six" Justices, and that this court is without authority to disapprove it. That section declares that decisions by a full bench of six Justices shall not be overruled or materially modified, except with the concurrence of six Justices, etc. In the case last referred to, Russell, C. J., and Gilbert, J., were marked as concurring in the result. This is not the equivalent of concurring in the decision. So far as we know (and counsel have cited no case to the contrary), a decision of this court has not been treated as a decision by a full bench of six Justices when one or more are marked merely as concurring in the result. It is as if they wish to announce that they concur in the judgment only. Frequently the words "decision" and "judgment" may be used interchangeably, but in the abstract

there is a shade of difference between the import of the two, according to Abbott's Law Dictionary, 351. As expressed in Buckeye Pipe-Line Co. *v.* Fee, 62 Ohio, 543 (57 N. E. 446, 78 Am. St. R. 743) : "The decision is the resolution of the principles which determine the controversy. The judgment is the formal paper applying them to the rights of the 'parties." Numerous authorities are to the effect that a decision is not an authority upon a question not considered by the court, though involved in a case decided. See Duronsseau *v.* United States, 6 Cranch, 307 (3 L. ed. 232) ; Buel *v.* Van Ness, 8 Wheat. 312 (5 L. ed. 624) ; New *v.* Oklahoma, 195 U. S. 252 (25 Sup. Ct. 68, 49 L. ed. 182) ; and other cases cited in 2 U. S. Dig. L. ed. 23-27, referred to in City of Raleïgh *v.* Mechanics & Farmers Bank,  N. C.  , 26 S. E. 2d, 573, 589. The position of counsel seems to be that because all the Justices concurred in the judgment in the *Caison* case, supra, they all are committed by every point there involved, and discussed in the opinion and ruled upon, although the concurrence of two members of the court was limited to the result. It is respectfully submitted that while the judgment was by six Justices, the decision was not the unanimous speech of the court under the circumstances there reported, and that it could no more be considered a decision by six Justices than it could be said, contrary to the line of authorities cited above, that a decision in a case was binding on an issue not even considered by the court, although involved in the case which was adjudicated.

Counsel further argue that the opinion is not the decision; and that there is nothing in the constitution or the Code requiring the court to write an opinion, although they cite the Code, § 6-1606, which declares: "No decision shall be delivered ore tenus; but the same shall be announced by a written synopsis of the points decided, which shall be delivered during the term at which the decision was made. No decision shall be published in the reports until the said decision shall have been revised by each of the Judges presiding in the case." To give the word "decision" the rendering contended for by counsel would, it seems to us, make it mean merely the judgment of the court, either that it be affirmed or reversed; that it is merely this judgment that shall appear in the reports; and that what it is that shall be revised by each of the Judges before publication is merely the order reversing or affirm-

ing the judgment excepted to. The written synopsis of the points decided, as required by the Code, indicates that something more was intended by the use of the word "decision" than the mere judgment of affirmance or reversal. The result in the *Caison* case, supra, was a judgment of reversal. If Russell, C. J., and Gilbert, J., had agreed to the decision, as distinguished from the judgment of reversal, what need was there for having it entered that they concurred in the result? True no reason was assigned for their limited concurrence. For aught that appears, there might have been something in the record, apart from anything contained in the synopsis of the points decided, or in the reasons given by the Justice delivering the opinion, which caused them to concur in the judgment of reversal. The only thing that the six Justices concurred in, so far as is shown, was that the judgment should be reversed. There is a negative pregnant in the clause "concur in the result." It is tantamount to an expression that those who merely concur in the judgment are not giving their full concurrence to what appears in the report of the case, and that only the judgment is rendered by a full bench.

The soundness of this line of reasoning is illustrated by the very case under discussion. The judgment in the *Caison* case was reversed on two separate, independent assignments of error, agreement as to the decision on either of which would have required a concurrence in the result, i. e., a judgment of reversal. How can it be said that the two members of the court who merely concurred in the result agreed to the ruling under review? If there had been only one ground on which the judgment was reversed, and all had agreed to the result, it might possibly be said that the entire court were in accord in holding that the charge to the jury was error for the reason assigned, and that their concurrence in the result would indicate only that they might not have agreed to the reasoning set forth in the opinion; but no basis exists for any such supposition here.

The effect of the enactment by the General Assembly of the provision in the Code, § 6-1611, was to give the sanctity of a legislative act to all the unanimous decisions of this court, except as therein stated. See *Atlanta & West Point Railroad Co.* v. *Hemmings,* 192 *Ga.* 724 (16 S. E. 2d, 537), and cit. We are unwilling to invest a decision of this court with the rigidity of a statutory

604

enactment by virtue of the Code section last cited, when it bears on its face, as we think the *Caison* decision does, that the concurrence of one or more of the members of the court participating therein was only in the judgment entered therein, unless it further appears, as it does not in the *Caison* case, that the concurrence in the judgment necessarily meant an agreement as to the decision of the court on which the judgment was based.

*Rehearing denied.*