REEVES *v.* THE STATE.

No. 14525. SEPTEMBER 9, 1943. REHEARING DENIED OCTOBER 8, 1943.

608

J. M. *Cowart* and *Lowrey Stone,* for plaintiff in error.

T. *Grady Head, attorney-general, Maston O'Neal, solicitor-general, Robert B. Short, Miller & Miller,* and *L. C. Groves, assistant attorney-general,* contra.

JENKINS, Presiding Justice.   While the grounds of the motion for new trial, covered by divisions 1 and 2 of the syllabus, were not abandoned, the entire stress of the argument, both oral and by brief, has been made upon the alleged error of the judge in charging on the law of delusional insanity.   This contention was made and argued both in the original brief and more especially and much more elaborately on motion for rehearing.   The contentions on this phase of the case may be stated as follows: (a) That the instant case is controlled by what was held in *Caison* v. *State,* 171 *Ga.* 1 (4), 8 (154 S. E. 337), where this court, in a case which did not involve the defense of delusional insanity, held that it was error to charge on that defense in language identical with the charge in the instant case, in that it tended to mislead and confuse the jury.   (b) That in order to constitute a good defense with respect to delusional insanity, the act itself must have been connected with such a delusion.   (c) That in order for such a defense to be good, the delusion must have related to a fact which, if true, would have justified the act.   And (d) That the defense of delusional insanity was not in fact raised by the defendant's statement to the jury, for the reason that the belief under which the defendant acted was not an unfounded belief, springing spontaneously from a diseased mind, without any foundation of fact.   These contentions, especially the first and last, were elaborated and argued at length, with much authority cited on motion for rehearing.

(*a*) The original opinion treated the charge in the *Caison* case and the charge in the instant case as substantially identical, and dealt with it on the basis that the charges were identical.   On motion for rehearing much stress is laid upon the fact that they were not only substantially identical, but actually identical.   The two charges have been again compared, and as originally stated, we find that, while not *verbatim et literatim* absolutely the same, they are "substantially" so, and vary only in some fifteen or more small particulars of no materiality; and therefore we treat the charges

now, as we did then, just as if they were absolutely identical in all respects.

Taking up the four contentions outlined in the order stated, we deal first with the ruling made in the *Caison* case. In the original opinion this court differentiated that case from the instant case, on the theory that, whereas here the defense of delusional insanity was made by the defendant's statement to the jury, the reasoning and the ruling in the *Caison* decision, where such a defense was not made or involved, were inapplicable. While the instant case was pending, the case of *Smith* v. *State,* 196 *Ga.* 595 (27 S. E. 2d, 369), reached this court. In the *Smith* case, as in the *Caison* case, the defense 'of delusional insanity was *not* involved; and although the charges in the *Caison* case and in the *Smith* case were not substantially identical, as in the instant case, it was thought proper to defer the decision in the instant case in order that this case and the *Smith* case might be considered contemporaneously.

It is the general rule that a judge is not required, without a request, to charge on a defense made only by the defendant's statement, but that it is proper to so charge; and where either a request based on the statement is made, or such a defense is made by the evidence, a charge upon such a defense becomes obligatory. *Leary* v. *State,* 187 *Ga.* 445 (200 S. E. 779) ; *Shafer* v. *State,* 191 *Ga.* 722 (3) (13 S. E. 2d, 798), and cit.; *Irwin* v. *State,* 194 *Ga.* 690, 698 (4) (22 S. E. 2d, 499). It is also the general rule that instructions, even though abstractly correct, should not be given unless authorized by the evidence, or in criminal cases by the evidence or by the statement of the defendant; and when such an unauthorized instruction is given, if it should be confusing or misleading to the jury, a new trial will be required. *Davis* v. *State,* 190 *Ga.* 100 (4) (8 S E. 2d, 394), and cit.

The rules governing excusability for a homicide on account of general insanity and on account of delusional insanity are separate and distinct. Where the defense relates to general insanity, the rule is that if a man has reason sufficient to distinguish between right and wrong, he is responsible; but the rule as to delusional insanity constitutes an exception to this general rule; and where general insanity and delusional insanity are both relied on, or where delusional insanity alone is relied on, the rule is, that even if

one has reason sufficient to distinguish between right and wrong, yet if in consequence of some delusion the will is overmastered, and there is no criminal intent, he is not responsible, provided that the act itself is connected with the peculiar delusion under which the defendant is laboring. *Rozier* v. *State,* 185 *Ga.* 317 (2), 320 (195 S. E. 172).

Where the defense of delusional insanity is not involved, if the charge to the jury on delusional insanity be given not plainly and distinctly as a separate and independent defense, constituting an exception to the rule governing general insanity, but "be given as a part of an instruction upon insanity generally," without clear differentiation, such a commingling of an instruction on delusional insanity with an otherwise correct charge on general insanity may tend to confuse the jury, especially where the defense of delusional insanity is not involved, since in such a case, where the defense of delusional insanity is in no wise involved, such a commingling of the two somewhat analogous defenses would require the jury to apply the charge to the evidence dealing only with the defense of general insanity, and thus impose upon the defendant an additional and unauthorized burden in sustaining that defense.

Where, however, both the defense of general insanity and the defense of delusional insanity *are* involved, it is not only the right but the duty of the judge to give to the defendant by his charge the benefit of both defenses; and a correct charge upon both defenses, as actually made, could not be misleading or confusing, nor does it impose upon the defendant any additional burden in making out either defense relied on, but it merely gives him the benefit of instructions applicable to each.

In the *Caison* case, where, as stated, the defense related solely to general insanity, and the defense of delusional insanity was in no wise involved, the court first charged correctly on the defense of general insanity, then and in immediate connection instructed the jury as follows: "If on the contrary, gentlemen, you should believe the defendant committed the act charged against him in this bill of indictment, and in the manner therein alleged, and that at the time of its commission he was not mentally incapable of distinguishing between right and wrong with reference to such act, but at the time of the commission of said act was mentally capable of distinguishing between right and wrong with reference to such

act, and was not irresistibly impelled to its commission by reason of any mental disease, he would not be excusable for the same on the ground of mental disease or insanity." This latter charge, while immediately following the law of general insanity, related solely to the defense of delusional insanity which was in no wise involved, and, while sound and not contradictory if standing alone, might possibly have been confusing to one unlearned in the law as not being clearly differentiated from the defense actually made. But this latter excerpt, complained of in the *Caison* decision, did not stand alone; but immediately following it the court elaborated this charge on delusional insanity by explaining exactly wherein it differed from the defense of general insanity, and plainly stated that such a defense constituted *"an exception"* to the rule on general insanity. This elaboration, immediately following the excerpt just quoted, was as follows: "The rule of law of force in this State, which relieves one from criminal responsibility for the commission of an unlawful act on account of mental disease is: If a man has reason sufficient to distinguish between right and wrong in relation to a particular act about to be committed, he is criminally responsible. An exception to this rule is, where a man has reason sufficient to distinguish between right and wrong as to a particular act about to be committed, yet, in consequence of some delusion, his will is overmastered, and there is no criminal intention, provided, that the act itself is connected with the particular delusion under which the defendant is laboring." Accordingly, it is our opinion that the plain and specific clarification made by the immediate context in the *Caison* case would prevent any misconception or commingling in the minds of the jury of the two rules, so that the *Caison* case must be disapproved, as was this day decided in *Smith* v. *State,* supra, in which the four-judge ruling in the *Caison* case is in terms disapproved. This is true even though there was no evidence in the *Caison* case raising the defense of delusional insanity. The charge on delusional insanity being thus explained as a separate and independent defense, constituting an "exception" to the general rule governing general insanity, the charge on delusional insanity even in the *Caison* case, where delusional insanity was not involved, merely gave to the defendant a defense to which he was not entitled, and as to which he could not complain. A fortiori, in the instant case, where the same clarify-

ing explanation was made, and where, as will be shown, the defendant relied not only on general insanity but delusional insanity as well, the ruling in the *Caison* case, even if sound, would not afford ground for reversal.

In *Davis* v. *State,* 190 *Ga.* 100 (supra), a full-bench decision, where it was held that the charge on delusional insanity had properly been given, an examination of the record shows that the charge there given, with the same clarifying explanation in the same connection with the instruction complained of, was, as in the instant case, substantially identical with the charge in the *Caison* case.

(b) With regard to the second contention by counsel for the defendant, that in order to constitute a good defense with respect to delusional insanity the act itself must have been connected with such a delusion, no elaboration seems necessary, since it manifestly appears from a portion of the defendant's statement to the jury that he not only referred to such a belief, but urged that his act was brought about by what he himself termed a "morbid sensation" under which be claimed he was laboring. The defendant introduced no evidence, but it is apparent that his statement was given, not in justification of the homicide, but to convince the jury that it was caused by a diseased mind brought about by accidents, shell-shock, and a surgical operation for "double mastoids," which did not properly heal and later gave trouble; and by what he designated as a "morbid condition" following the sardine and onion incident, related in the statement of facts, twenty years before the homicide, which condition he could sometimes shake off and sometimes could not, until such "morbid condition" caused him to "blow his top" at the time of the homicide.

(c) The defendant contends, as a third reason why the charge on delusional insanity was erroneous, even if delusional insanity was involved, that under the rule recognized in this State (but which is in conflict with many of the adjudications in other jurisdictions) such a defense is good only when, if the delusion were true, it would have justified the killing. See *Barker* v. *State,* 188 *Ga.* 332 (4 S. E. 2d, 31), and cit.; *Mars* v. *State,* 163 *Ga.* 43 (4), 51, 54, 60 (135 S. E. 410); *Flanagan* v. *State,* 103 *Ga.* 619, 623 (30 S. E. 550); *Roberts* v. *State,* 3 *Ga.* 310 (3), 326; *King v. Hadley,* 27 Howell's State Trials, 1282, 1314, 1354. The defendant, however, cannot complain that such a ground of defense was

charged, since the instruction, even in such event, merely gave to him the benefit of an additional defense to which he might not have been entitled.  *Davis* v. *State,* 190 *Ga.* 100 (4, *a*) (8 S. E. 2d, 394).  It would be a different situation were the defendant complaining that he was *not* given the benefit of such a defense. In that event, the decisions cited might serve as authority to nullify such a ground of exception based on a failure to charge; whereas giving to the defendant the benefit of what might not have been a good defense is not a fault of which he can complain.

(*d*) The fourth contention, on which authorities have been cited and which is especially stressed on motion for rehearing, is that the defense of delusional insanity was not in fact raised by the defendant's statement to the jury, for the reason that his belief was not an unfounded one, springing spontaneously from a diseased mind, without any foundation of fact.  Under the ruling in the *Smith* case, supra, and the preceding ruling in this case, disapproving the ruling in the *Caison* case that the charge on delusion insanity in that case, which did not involve delusional insanity, was erroneous and confusing and therefore reversible error, it really becomes unnecessary to determine whether or not the defense of delusional insanity was raised by the defendant in the instant case.  But since the opinion in this case as originally written merely distinguished, without disapproving, the *Caison* decision on the ground that delusional insanity had not there been raised, while it had been raised in this case, it is nevertheless thought proper to consider also this question as dealt with and elaborated in the able and learned brief of counsel, filed on motion for rehearing.  It is manifest that if the charge, as in the *Caison* case, was not erroneous even if delusional insanity was not involved, it makes no difference whether the contention of counsel is right or wrong as to whether this defense was actually made.  But even if it were to be considered that the *Caison* decision was right, this case would still be distinguishable if, contrary to the *Caison* case, delusional insanity was in fact involved in this case.  As an additional reason for our decision, we therefore will determine whether the defendant by his statement to the jury did in fact invoke the defense of delusional insanity.  Counsel in their brief on motion for rehearing cite a number of will cases decided by this court, in which delusional insanity was defined: *Bohler* v. *Hicks,*

120 *Ga.* 800 (2), 804 (48 S. E. 306); *Dibble* v. *Currier,* 142 *Ga.* 855, 856 (83 S. E. 949, Ann. Cas. 1916C, 1); *Dyar* v. *Dyar,* 161 *Ga.* 615, 628 (131 S. E. 535); *Stephens* v. *Bonner,* 174 *Ga.* 128 (6) (162 S. E. 383).

In *Bohler* v. *Hicks,* in which one Justice did not participate, the court discussed a number of other Georgia cases, and used this language: "The delusion must spring up spontaneously in the mind of the person, and not be the result of evidence of any kind." The court further said: "The true test between a delusion, used in the sense of a mistake of fact, and a delusion which is the off-spring of a deranged mind is that the latter springs spontaneously from disordered intellect, while the former is the result of an erroneous conclusion based either upon a mistake of fact or an illogical deduction drawn from facts as they really exist. The subject-matter of an insane delusion must have no foundation of fact and must spring from a diseased condition of the intellect." In the *Bohler* case, it was decided on demurrer that no insane delusion on the part of a husband, who had disinherited his wife, was alleged in a mere averment as to the testator's having executed the will "under the delusion that acts of kindness on her part to a named person were prompted by or the result of improper intimacy between [the wife and such person], whereas said delusion was without any foundation in fact." There, as pointed out as the basis of the decision, it was in no wise shown what the "acts of kindness" were, or that they were not such as might reasonably have given rise to such a conception in a normal mind.

We cannot think that our court, in saying that delusional insanity must spring spontaneously from a disordered intellect without any foundation of fact, meant that the delusion must have been based on nothing whatsoever. We cannot believe that the court intended to challenge the axiomatic truth that there is no effect without a cause. Rather do we think that the court manifestly intended merely to convey the idea that delusional insanity springs from a disordered mind without any rational cause. This we think is clearly manifested by these very decisions. For example, in *Dibble* v. *Currier,* supra, while the definition of delusional insanity as given in the *Bohler* case was quoted with approval, it was nevertheless held in the *Dibble* case that the allegations were sufficient, as against demurrer, to set up the defense of delusional in-

sanity; these averments being that the testatrix, after being deserted by her husband and obtaining a divorce, brooded over these facts and the fact that her heirs at law would not comply with her request to kill her former husband, and that because they would not do so she became imbued with the hallucination that they were not really related to her, and therefore were not entitled to her affection as kinsmen. In that case, the delusion did not spring out of airy nothingness; nor did the belief so arise in the instant case, where the defendant in his statement to the jury claimed that he became obsessed with the idea of his wife's previous intimacy with the deceased by reason of the fact that the deceased appeared with others at the defendant's wedding, about twenty years before the homicide, and there presented to the bride sardines and onions; and that he brooded over this fact for about ten years, until, as he told the sheriff, he made his first attempt to kill the deceased. We think in this case, as was held in the *Dibble* case, that the judge did not err, so far as the defendant might complain, in submitting his contention to the jury.

In like manner, this court held in *Dyar* v. *Dyar,* supra, that delusional insanity was involved, where the only delusion alleged was that the testator became obsessed with the idea that any daughter of his who married thereby made a choice between him and the man she married, forever cut off any relationship with the testator, and was no longer his daughter. There, as in the *Dibble* case, the delusion was not based upon mere spontaneous fancy, but was the irrational figment evolved by a disordered brain. And in *Stephens* v. *Bonner,* supra, the testator became imbued with the idea that his daughter was not his, because she refused to obey his command to desert her husband; and, based only upon this irrational assumption, the court held that the question of delusional insanity became an issue of fact for the jury.

Much case and text-book authority sustains the construction as to what constitutes delusional insanity as here enunciated. Riggs *v.* Home Missionary Society, 35 Hun (N. Y.) 656, 658; In re Russell's Estate, 189 Cal. 759 (210 Pac. 249, 254) ; Medill *v.* Snyder, 61 Kan. 15 (58 Pac. 962, 78 Am. St. R. 307, 313) ; Johnson *v.* Johnson, 105 Md. 81 (65 Atl. 918, 919, 920, 121 Am. St. R. 570) ; In re Forman's Will, 54 Barb. (N. Y.), 274, 289; In re Jenkins' Will, 39 Misc. 618 (80 N. Y. Supp. 664, 665) ; 1 Clevinger's Medi-

cal Jurisprudence of Insanity, 16; 1 Page on Wills, 294, §§ 143, 144, and cit.; Buswell on Law of Insanity, 17, 18, §§ 13, 14; 28 Am. Jur. 657, § 3.

While it is true that the defendant in his statement to the jury made the general assertion that, about four years before the homicide (but long after his first attempt to kill the deceased on account of the sardine and onion incident), "I found out they were more than acquainted, and I resented it, and I looked back on things that had happened before that, his coming over there and not being hardly acquainted, with his sardines and things, it looked like he was making fun of me, and took everything in life away from me,"—it thus appears that, even according to this portion of his statement, the sardine and onion incident was the salient factor in his mind. Immediately after the statement quoted, he continued as follows: "I felt that I was being robbed of everything that meant anything to me. That morbid condition I would fight it off and work to get rid of it; it was all that was on my mind, and I could not sleep. It would sometimes disappear, and I would go for six months or a year; and if I thought of it, it would not be of any consequence at all. So along in December of last year, there was about four or five years that I didn't think of it, I was just as happy as any man could be; and then in December it got to worrying me, and I could not get rid of it. When I was at work it would bother me, and I could not sleep at night. I would lie awake all night, but I would always manage to get rid of that morbid sensation, and I would go ahead; and if the thoughts I had been having occurred to me, it would not make an impression, and at other times when it returned I could not fight it off. I was about the most miserable human being that ever lived. It had been several years since I had felt that way, and in December I got to thinking about it, and it ran on up into this year; and so the day before Barnett was killed, the mayor there in Arlington told me to lay some piping, . . and I got some negroes to lay it off, and went up to Edison and borrowed a tapping machine and went into the main and tapped it and laid the pipe. I knocked off that night, and the next morning, the 14th [of May], I had been worrying about that for the last three or four days; and so Thelma and I had an argument, and I accused her of her and Barnett being intimate before we were married, and I felt like all my unhap-

piness was caused by Barnett, and I just blowed my top." We can find in the record not the slightest scintilla of support for the suggestion made by counsel in their brief that, after the defendant just before the homicide had accused his wife of being intimate with the deceased before the marriage, "it is certainly inferable, to say the very least, that there was then an admission of that intimacy." But even if the portion of the defendant's statement just quoted should be taken to mean more than it says, it was the province of the jury, so far as his statement was concerned, to believe or reject any portion as they saw fit, without any effort to reconcile the same.

Accordingly, we think that the court was seeking to jealously protect the rights of the defendant in accordance with the theory of defense presented by him in his statement; that in giving him the benefit of the charge on delusional insanity no harm or injury was done; and that, under any conceivable construction, the most that can be said is that he received the benefit of a defense which he invoked, but to which he might possibly not have been entitled.

*Judgment affirmed.  All the Justices concur, except Bell, C. J., disqualified.*