BOHLER, executor, *v.* HICKS.

1. The conclusion that a testator was a monomaniac is not warranted by the bare circumstance that, actuated by a spirit of resentment against his wife, he disinherited her in his will for the sole reason that she had interfered with him in carrying out his deliberate choice to lead an immoral and dissolute life.

2. A misconception as to a particular matter can not properly be characterized an insane delusion, when it does not spring up spontaneously from a disordered intellect, but is the result of an erroneous conclusion, based either upon a mistake of fact or upon an illogical deduction drawn from facts as they really exist.

3. It is to be assumed, when an alleged "mistake of fact" on the part of a testator as to the conduct of an heir at law is set up as a reason why a will disinheriting such heir should be held to be inoperative as to him, that the caveator had in mind such a mistake of fact as is referred to in the Civil Code, § 3262, rather than a mistaken belief by the testator such as would afford no good ground for a caveat; and it is not necessary that the caveator should allege facts negativing an unwarranted inference to the contrary.

4. A ground of a caveat alleging that, "from advancing age and long-protracted intemperance, dissipations and excesses," a testator "had become so weak of intellect and will power as to be mentally incapacitated to execute a will, and that as a result thereof he made an unnatural and unreasonable disposition" of his property by disinheriting his sole heir at law and bestowing it upon strangers, is not open to demurrer on the ground that the allegations therein "are vague and indefinite and fail to set out facts sufficient to show that [the testator] was wanting in testamentary capacity." Wherein a will of this nature is unnatural and unreasonable need not be set forth in a caveat, but it is not improper to therein allege in detail the reasons why the will should be so regarded.

5. Undue influence which operates to invalidate a will is such influence as amounts either to deception or to force and coercion, destroying free agency.

6. Where the misrepresentation which operated to the injury of an heir at law is fully and distinctly set forth in a caveat, this is sufficient; and it is not incumbent upon the caveator to indicate in his pleadings how he expects to prove the allegations therein made.

7. The erroneous refusal of the trial court to strike on demurrer certain grounds of the caveat necessitates another hearing of the case; as evidence in support of some of these grounds was introduced by the caveatrix, and it is impossible to tell upon what ground or grounds of the caveat the jury based the verdict in her favor.

Argued May 17, — Decided August 11, 1904.

Probate of will.　Before Judge Gary.　Richmond superior court.　August 24, 1903.

*Joseph B. & Bryan Cumming, H. C. Hammond,* and *Oswell R. Eve,* for plaintiff.

*Boykin Wright, J. C. C. Black,* and *C. H. Cohen,* for defendant.

Evans, J.　On July 18, 1902, Charles S. Bohler, as one of the nominated executors of Henry H. Hicks, deceased, offered for probate in solemn form, in the court of ordinary of Richmond county, a paper purporting to be his last will and testament. One of the beneficiaries therein named was Julia A. Hicks, the

wife of Henry H. Hicks, who was thereby given the sum of $1,000 for a year's support, and also one third of his real estate, to be in lieu of dower, for and during the term of her natural life. Other beneficiaries were therein named to receive the residue of his estate, which was of considerable value. The court of ordinary rendered a judgment establishing this paper as his will and admitting the same to probate, over a caveat presented by Julia A. Hicks, containing seven grounds. She thereupon entered an appeal to the superior court of that county, wherein she amended her pleadings by setting up three additional grounds of caveat. To seven grounds of the caveat, as amended, the propounder demurred both generally and specially. The court overruled his demurrer, and a trial was had on the merits, resulting in a verdict and judgment in favor of the caveatrix. He made a motion for a new trial, but it was overruled by the court. Exception is taken by him to both the judgment overruling his demurrer and that denying him a new trial. In the view we take of the case, it is only necessary or proper to deal with the rulings of the trial court touching the merits of the demurrer. The grounds of the caveat demurred to, as well as the objections urged against them, will be set forth in the discussion which follows, disposing of the questions thus presented for our determination.

1. One of the grounds of the caveat was that the testator, "at the time of making said pretended will, was afflicted with monomania upon the subject of his wife's interference with him in his improper relations with other women, and that said monomania influenced [the testator] in executing said instrument disinheriting his said wife." To this ground of the caveat the propounder demurred, because the allegations therein were vague and indefinite, and no facts were set up which showed the existence of monomania. We think this objection was well taken. Monomania is partial insanity, as contradistinguished from general insanity ; the monomaniac is sane generally, but is insane on a particular subject or class of subjects. Schoul. Wills (3d ed.) §§ 143, 144; 16 Am. & Eng. Enc. L. (2d ed.) 564. The party afflicted with monomania is conscious of his ability to manage his affairs, and is utterly unconscious that, with respect to any particular subject-matter, he is irrational or of unsound mind. Schoul. Wills, § 144, p. 146. The very name "monomania" implies par-

tial insanity and excludes the idea of any sort of ratiocination as to the particular subject to which the partial insanity relates. Monomania can not be implied because a person takes a narrow, or prejudiced, or utterly illogical view of a particular subject. Ibid. § 162; *Carter* v. *Dixon*, 69 *Ga*. 90. It is not the result of any conclusion; the person does not arrive at his conviction because of any attempt either at reasoning or investigation; the partial insanity is the offspring of a disordered intellect. A man may be utterly abandoned to every form of lust; and though he has departed entirely from the paths of virtue, such depravity alone does not evince insanity. 1 Jarm. Wills, 74–75. His conduct may be the result of a depraved nature, — a conscious departure from the path of rectitude because of a depraved but deliberate choice, — a preference for a sinful and immoral life over one of right-doing and correct living. The allegations of fact set forth in the above-quoted ground of the caveat are, (1) that the testator had improper relations with other women, and (2) that his wife interfered with him in regard to such reprehensible conduct on his part. A sane man may have improper relations with women, and may persist in his wrong-doing despite the interference of others. Nowhere in this ground of the caveat is there the slightest suggestion that the wife did not interfere with the testator in his improper relations with other women, or that the testator had an hallucination with respect to interference by her with his lascivious and lustful conduct. The only fair construction to be placed upon the language used in this ground of the caveat is, that the testator, because resentful of his wife's interference with his improper relations with other women, was afflicted with monomania on that subject. In other words, this ground seems to have been based upon the theory that if a virtuous wife interferes with the improper relations which a lascivious husband has with other women, and her interference is such as to arouse in the husband a spirit of resentment towards his wife, and, influenced by such resentment, he makes a will disinheriting her, the conclusion is irresistible that he was a monomaniac and therefore incapable of making a valid will. An immoral man, under the laws of Georgia, is not deprived of the privilege of making a will. He may justly be held up to the most severe criticism because, instead of yielding to the persuasive influence or entreaties,

or even actual interference, of a virtuous spouse in a laudable effort to bring about his reformation, he persisted in his lasciviousness, and, actuated by a spirit of resentment because of her attempt to influence his conduct, disinherited her in his will. Such conduct on his part is deserving of condemnation by all right-thinking people, and is such as to incur the censure and displeasure of all who have a proper sense and appreciation of good morals and righteous behavior. But such perverse conduct does not amount to insanity; it is wickedness, pure and simple; it is the deliberate action of a depraved man cherishing a prejudice against a pure wife whose efforts to induce him to lead a correct life were wholly praiseworthy. Inasmuch, however, as the law permits an immoral man to make a will directing how his property shall be disposed of after his death, and prescribes no different tests of sanity from those to be applied in determining the testamentary capacity of a thoroughly moral and upright man, conduct on the part of the former which is the result of his moral obliquity can not be regarded as evidence of insanity, but only of his depraved nature.

2. A delusion such as will deprive one of testamentary capacity must be an insane delusion. An insane delusion was said by Sir John Nichol, in the celebrated case of Dew *v.* Clark, 3 Add. Ecc. 79, to exist wherever a person conceives something extravagant to exist which has no existence whatever, and he is incapable of being permanently reasoned out of that conception. The correctness of this definition of an insane delusion has been recognized in the great majority of the English and American cases. The delusion must spring up spontaneously in the mind of the person, and not be the result of evidence of any kind. Thus, in Middleditch *v.* Williams, 4 L. R. A. 738 (6), it was held: "Where a person is induced by false evidence or by false statements to believe a fact to exist, or where, in consequence of his faith in evidence which is true, but which is wholly insufficient to prove the truth of what he believes, he believes a fact to exist which in reality has no existence, his belief may show want of discernment, or that he lacks ordinary power of discrimination, and is consequently easily duped, but not that his mind is unsound." And see authorities cited in note to that case. An insane delusion does not mean a mistaken conclusion from a given state of facts, nor a mis-

taken belief as to the existence of facts. An erroneous conclusion of a sane person may arise from incorrect reasoning or from a deduction from information which he supposed to be correct. In *Lucas* v. *Parsons*, 24 *Ga.* 661, McDonald, J., who delivered the opinion, said that the definition of the term "delusion," given by the trial judge, was correct. The trial judge charged the jury that "if the deceased was laboring under a delusion of mind on any subject at the time of the execution of this will, and the will is the result of that delusion, then it is void, though he might have been sane on all other subjects; but unless the will be the result of such delusion, his will is not vitiated by partial insanity or delusion on a subject not affecting his mind when the will was made. A delusion is where one supposes a thing to be true which is not true, and acts in reference to it as though it were actually true, and under a firm belief that it is so." Ibid. 651. In that case the question was not so much whether the testator was afflicted with an insane delusion, but whether the will was the offspring of that delusion. Attention is called to the further fact that the decision in this case was rendered in 1858. The provisions of the section of our code on the subject of "mistake of fact" were first introduced into our law by the codifiers of the Code of 1863. Prior to that time the term "delusion" was used in its generic sense, embracing both a mistake of fact and an insane conception. The definition of this term given by the trial judge illustrates this. The same definition is equally applicable to a mistake of fact. The true test between a delusion, used in the sense of a mistake of fact, and a delusion which is the offspring of a deranged mind is that the latter springs spontaneously from disordered intellect, while the former is the result of an erroneous conclusion based upon either a mistake of fact or an illogical deduction drawn from facts as they really exist. The subject-matter of an insane delusion must have no foundation in fact and must spring from a diseased condition of the intellect. If the testator undertakes to make an investigation and arrives at the conclusion that a certain state of facts exists which in point of fact does not exist, such conclusion may be attributable either to a mistake in judgment or a mistake of fact, and will not be evidence of insanity. 1 Underhill on Wills, §§ 94, 95.

That Hicks, the testator, at the time of making his will, was in-

fluenced by insane delusions, is alleged in the fourth and tenth grounds of the caveat, as follows: The "said Henry H. Hicks executed said pretended will under a mistake of fact as to the conduct of this caveator and heir at law, in this, . . that he was under such mental delusion as to believe that she advised or attempted to procure one W. J. Rutherford Jr. to kill said Henry H. Hicks; whereas this caveator was innocent of said conduct, and was at all times forbearing and forgiving toward the said Henry H. Hicks, under circumstances of the most flagrant and continuous infidelity to her; that the said mistake of fact and delusion under which the said Hicks labored maddened and unbalanced his mind toward this caveator; and that while in this state the said pretended will was executed as a result of said mistake of fact and delusion." The "said Henry H. Hicks executed said pretended will under the delusion that acts of kindness on her part to William O. Bohler were prompted by or the result of improper intimacy between her and the said William O. Bohler; whereas said delusion was without any foundation in fact, this caveatrix and said William O. Bohler being alike innocent and guiltless of any improper intimacy and incapable of the same; and said delusion operated on the mind of said Henry H. Hicks in making said will, and, as to this caveatrix, deprived him of testamentary capacity." It will be observed that the allegations in these grounds are vague and indefinite. In one of them there is a blending of mistake of fact and delusional insanity; in the other the averment is to the effect that Hicks, the testator, misconstrued acts of kindness on the part of the caveatrix towards William O. Bohler and executed the will under the erroneous conception that there had been "improper intimacy between her and said William O. Bohler; whereas said delusion was without any foundation." Mere jealous suspicion, however groundless, does not amount to delusional insanity. Underhill on Wills, § 95. Neither of these grounds of the caveat alleged anything more than that the testator executed his will under a mistaken and groundless belief that his wife had been guilty of most flagrant disloyalty to him. In other grounds of the caveat the erroneous conception he had as to her conduct with respect to these matters is alleged to have been a mistake of fact. It did not, under the facts alleged, amount to an insane delusion; and the trial judge erred in not striking on demurrer both the fourth and the tenth grounds of the caveat.

3. The third ground of the caveat was as follows :    The " said
Henry H. Hicks executed said pretended will under a mistake of
fact as to the conduct of this caveator and heir at law, in this, . .
that he supposed that she advised or attempted to procure one
W. J. Rutherford Jr. to kill the said Henry H. Hicks; whereas
this caveator was innocent of said conduct, and was at all times
forbearing and forgiving toward the said Henry H. Hicks under
circumstances of the most flagrant and continuous infidelity to her;
that the said mistake of fact under which the said Hicks labored
maddened and unbalanced his mind toward 'this caveator, and
while in this state the said pretended will was executed as a result
of said mistake of fact." This ground of the caveat was demurred
to, because the allegations therein were vague and indefinite and
did not set out such a mistake in fact as would be sufficient to reject
the will offered for probate, nor facts showing mental incapacity.
We think the demurrer to this ground of the caveat was properly
overruled, for the reason that an alleged mistake of fact as to the
conduct of the heir at law was sufficiently well pleaded, and
there was a distinct assertion that the will was the result of such
mistake of fact.    The averment respecting the conduct of the
caveatrix was, that, as erroneously supposed by the testator, she
advised or attempted to procure one Rutherford to kill the testa-
tor, but that in point of fact she was entirely innocent of any
such conduct.    There is, of course, " a difference between a ' mis-
take ' arising from mere ignorance and one which results from an
error of judgment after investigation or from negligent or willful
failure to make a proper investigation by means of which the
truth could be readily and surely ascertained."    *Young* v. *Mal-
lory*, 110 *Ga.* 12.    But the allegations of this ground of the ca-
veat do not justify the inference that the alleged mistake resulted
from an error of judgment after investigation made by the testa-
tor, or from a wilful failure on his part to make a proper investi-
gation in order to discover the truth of the matter.    It is to be
presumed that the pleader used the phrase " mistake of fact " ad-
visedly and in its legal sense, attaching to that phrase the mean-
ing it has as employed in the Civil Code, § 3262, and not that he
had in mind an erroneous impression on the part of the testator
such as was, in the case last cited, held not to amount to " a mis-
take of fact " within the meaning of that section, and not prop-

erly to be called such.    All it was necessary to allege was that the testator acted under a mistake of fact as to the above-mentioned conduct of the caveatrix.    It was not incumbent upon her to explicitly state in her pleadings that she knew what was, in legal contemplation, " a mistake of fact " on the part of a testator, and that she used this phrase in its proper, technical sense; nor was she under any obligation to set forth facts negativing all possible inference to the contrary.    In the ninth ground of the caveat she further alleged that " said Henry H. Hicks executed said pretended will under a mistake of fact as to the conduct of this caveatrix, in this, . . that he falsely believed that acts of kindness on her part to William O. Bohler were prompted by, or [were] the result of, improper intimacy between her and said William O. Bohler; whereas said mistake has no foundation in fact, this caveatrix and said William O. Bohler being alike innocent and guiltless of any improper intimacy, and incapable of the same; and said mistake of fact operated upon the mind of said Henry H. Hicks in making said will, and by reason thereof said will is inoperative as to her." The main objection to this ground, urged in the demurrer thereto, was to the effect that the alleged mistake of the testator amounted to no more than an error of judgment on his part as to the significance of acts of kindness to Bohler which she admitted.    We can not concur in this view, and, for the reasons stated in the discussion as to the third ground of the caveat, hold that the alleged mistake of fact set forth in the ninth ground thereof was well pleaded.

4. These grounds of the caveat were also specially demurred to because the mistakes of fact therein alleged do "not appear on the face of the will." There is nothing in the Civil Code § 3262, to suggest that a mistake of fact on the part of a testator can not be set up in opposition to the probate of his will unless the same appears on the face of the instrument, and we are unable to perceive why this condition should be engrafted upon the plain letter of the statute.    Courts will not, by construction, add a condition or qualification to a statute which is plain and unambiguous and is capable of a practical application as written.

5. The effect of the allegations made in the fifth ground of the caveat was to set up general testamentary incapacity brought about by old age, protracted intemperance, dissipations,

and excesses, which rendered the mind of Hicks so weak that he was incapacitated mentally to execute a will. The will was characterized as an unnatural and an unreasonable one, and the reasons assigned why this was true were that he had disinherited his wife, who had been true and faithful to him, had been chiefly instrumental in accumulating and preserving his estate, and was his sole heir at law, and that he had devised his property to strangers who had never contributed aught of labor, time, or sacrifice in amassing or taking care of the estate. The propounder demurred to so much of this ground of the caveat as set up why the will was an unnatural and unreasonable one, and also demurred to the whole ground as failing to " set out facts sufficient to show that said Henry H. Hicks was wanting in testamentary capacity." Neither of these criticisms has merit. The reasons why the will executed by Hicks was unnatural and unreasonable need not have been stated specifically; still it was not improper to set forth such reasons in detail.

6. The gravamen of the seventh ground of the caveat is that the will was the result of undue influence; that the testator was suffering from the effects of a protracted debauch, whereby his mind and will power were so weakened as to destroy his freedom of volition, and that while in this state he was unduly influenced by being told that his wife had advised or attempted to procure Rutherford to kill him. This ground was demurred to for the sole reason that the allegations therein contained were too vague and indefinite. Undue influence which operates to invalidate a will is such influence as amounts either to deception or to force and coercion, destroying free agency. Barnes v. Barnes, 66 Me. 286. This ground of the caveat sufficiently alleged these essential · elements, as against the objection urged thereto.

7. The eighth ground of the caveat was as follows: " Said pretended will was procured by a misrepresentation to the injury of her, said Julia A. Hicks, the sole heir at law of said Henry H. Hicks, said misrepresentation having been made by some person or persons unknown to her, and being that she had advised or attempted to procure one W. J. Rutherford Jr. to kill the said Henry H. Hicks." The Civil Code, § 3261, declares that " A will procured by misrepresentations or fraud of any kind, to the injury of the heirs at law, is void." The misrepresentation alleged in

this ground of the caveat was sufficiently set forth. It was not necessary that the caveatrix should put the propounder on notice as to the character of the evidence by which she expected to establish this ground of her caveat. *W. U. Tel. Co.* v. *Griffith*, 111 *Ga.* 565. She did not, as was assumed in the demurrer filed by him to this ground, undertake to set forth therein a mistake of fact, but evidently sought to frame this ground under the section of the code last above cited.

8. We have examined the very voluminous brief of evidence introduced on the trial. A large part of the evidence related to the grounds of the caveat which we hold should have been stricken on demurrer; and as it is impossible to tell upon what ground of caveat the jury based their verdict, it is necessary that the case should be tried over, in accordance with the views herein expressed.

*Judgment reversed. All the Justices concur, except Lamar, J., disqualified.*