S13A0218. ODOM v. HUGHES et al.
(748 SE2d 839)

HINES, Justice.

Barbara Ann Odom ("Odom"), propounder of a purported will of Louise Huether Burton ("Testator"), appeals from a judgment sustaining a caveat to the will, entered after a jury found that the propounded will was invalid due to lack of testamentary capacity, undue influence, fraud, or monomania. For the reasons that follow, we affirm.

Construed to support the verdict, the evidence showed that Testator was married to Charles Richard Burton and had three children, Odom, Jeanette Hughes ("Hughes"), and Bobby Burton ("Burton"). She also had two grandchildren, Aimee Odom ("Aimee"),

who is Odom's daughter, and Branden Hughes ("Branden"), who is the son of Hughes. On March 13, 2007, Testator signed a will that bequeathed all of her property, real and personal, to Hughes, Burton, and Aimee, in equal shares; the will specifically stated that Odom had failed to repay a large loan from Testator and had received during Testator's life "more than a child's share," and that Odom would receive no property through the will, only Testator's "love and affection." This will named Branden as executor. Also on March 13, 2007, Testator executed a warranty deed granting the real property where she lived to Branden, Burton, and Hughes as joint tenants with the right of survivorship, and reserved for herself and her husband life estates;[1] this was done partly in an attempt to avoid probate.

Odom had no interaction with Testator between March of 2007 and April of 2009, when Testator's husband died. At that time, Testator was diabetic and had been prescribed several medications. On April 19, 2009, Odom communicated with Graham, an attorney, and indicated that she believed Testator was mentally ill and did not understand either complex or simple issues. In the following months, Odom returned to Testator's good graces.

In July 2009, Branden discovered that financial documents he had been organizing for Testator had been removed from her house by Odom. On July 1, 2009, Odom drove Testator to the office of an attorney, Farless, to consult about a new will for Testator. In preparing this will, Farless had some discussions with Testator, but he also had considerable communication with Odom. Testator signed the new will prepared by Farless on September 2, 2009; it divided her property equally between her three children, and named Odom as executor. Testator also executed a power of attorney in favor of Odom. On September 11, 2009, Odom began routing Testator's financial statements to a post office box she controlled. Shortly thereafter, Odom contacted a financial advisor, McDonald, about the addition of a clause to Testator's most recent will voiding any bequest to a legatee who Testator had to sue over the March 13, 2007, real property transfer. Odom said that she was moving Testator's funds, that Testator did not really understand monetary values, that McDonald should not mention to Testator his fees, and that Odom was considering having her daughter Aimee named as beneficiary on Testator's investment accounts. Odom also contacted Farless about preparing a codicil to the will of September 2, 2009, or a new will. Farless prepared a new will, but Testator did not sign it; this drafted, but not

---

[1] Testator acted on behalf of herself and her husband, from whom she had a power of attorney.

signed, new will provided that Testator's property would be divided equally between her children, but also provided that if Hughes, Burton, and Branden did not transfer back to Testator their remainder interests in the real property from the March 13, 2007 warranty deed, they would receive nothing under the will, but that if they did make such transfers, they could receive their bequests under her will.

On November 5, 2009, Odom sent e-mails to Graham expressing dissatisfaction with the speed with which Farless was preparing the requested new will and asking Graham to draw up a new will, but to do so without notifying Testator that Graham was the "author" of the will. Graham agreed to prepare the requested will, but told Odom that, as Testator would be his client, she would necessarily be told who drafted it. The will Graham prepared was executed on November 25, 2009, and recites that Testator believes she was induced to execute the March 13, 2007 warranty deed, that she was in extreme emotional distress at the time she did so, and that she was not aware of the legal effects of her actions. It further recites that she wishes Odom to share in the real property, and provides that, if the interests of Branden, Burton, and Hughes in the real property have been relinquished to her before her death, the real property will be divided between her three children, but if those interests have not been conveyed to her, any interest she has in the real property will go to Odom alone; it also provides that the residue of her estate is to go to Odom alone.

Odom submitted the November 25, 2009 will for probate; Hughes, Burton, and Branden filed a caveat claiming lack of testamentary capacity, undue influence, monomania, and fraud. The probate court admitted the will for probate in solemn form, and the caveators appealed to superior court, where a jury found that the propounded will was not Testator's true last will and testament; judgment was entered to that effect, and this appeal followed.

1. Odom asserts that Branden has no standing to file a caveat to the will, as he is not an heir at law.

> The question of who has standing to caveat a will has been determined on a case by case basis, the general statement of the rule being that a will may be contested by any person interested in the estate of the deceased, but cannot be contested by strangers. [Cits.] . . . [A] person who will be injured by probate of a will, or who will benefit by its not being probated, has an interest in the proceeding so as to provide the necessary standing to caveat.

*Norman v. Gober*, 288 Ga. 754, 755 (707 SE2d 98) (2011) (Emphasis omitted.)

The March 13, 2007 warranty deed grants real property to Branden, Burton, and Hughes as joint tenants with the right of survivorship, reserving for Testator a life estate. The propounded will states that if those remainder interests are transferred to Testator, Burton, Hughes, and Odom will share the real property upon her death, but if not, Odom will take all interest in the real property that Testator has to give. As the remainder interests were not transferred to Testator, if the November 25, 2009 will is upheld, Odom succeeds to whatever claim Testator would make to the property, including any possibility of cancelling the 2007 deed, an act that certainly would be adverse to Branden's interest.[2] He is thus a person with a sufficient "interest in the proceeding so as to provide the necessary standing to caveat." *Norman*, supra at 755.[3]

Nor did the court err in denying the motion to dismiss Branden as a party without holding a hearing on the motion. *Worley v. Winter Constr. Co.*, 304 Ga. App. 206, 208 (2) (695 SE2d 651) (2010); Uniform Superior Court Rule 6.3.[4]

2. The trial court allowed the testimony of Hughes to be presented by deposition; there was evidence that she suffered from a neurological condition by which she could suffer seizures if exposed to certain sounds and light, including fluorescent light. Odom contends that the trial court did not make a formal finding that Hughes was unavailable due to illness or infirmity under OCGA § 9-11-32 (a) (3) (C),[5] and cites *Building Assocs., Inc. v. Crider*, 141 Ga. App. 825, 829 (6) (234 SE2d 666) (1977), for the proposition that "there *must* be a

---

[2] It appears that, in her capacity as executor under the propounded will, Odom is pursuing an action to cancel the 2007 warranty deed.

[3] In the March 13, 2007 will, Branden is also named as trustee of any funds Aimee receives under that will if she is not 18 years old at the time of Testator's death. See *Melican v. Parker*, 283 Ga. 253, 255-257 (1) (657 SE2d 234) (2008).

[4] Uniform Superior Court Rule 6.3 reads:
> Unless otherwise ordered by the court, all motions in civil actions, including those for summary judgment, shall be decided by the court without oral hearing, except motions for new trial and motions for judgment notwithstanding the verdict.
> However, oral argument on a motion for summary judgment shall be permitted upon written request made in a separate pleading bearing the caption of the case and entitled "Request for Oral Hearing," and provided that such pleading is filed with the motion for summary judgment or filed not later than five (5) days after the time for response.

[5] OCGA § 9-11-32 reads:
> (a) *Use of depositions*. At the trial or upon the hearing of a motion or an interlocutory proceeding, any part or all of a deposition, so far as admissible under the rules of evidence applied as though the witness were then present and testifying, may be used against any party who was present or represented at the

taking of the deposition or who had reasonable notice thereof, in accordance with any of the following provisions:

(1) Any deposition may be used by any party for the purpose of contradicting or impeaching the testimony of the deponent as a witness;

(2) The deposition of a party or of anyone who, at the time of taking the deposition, was an officer, director, or managing agent or a person designated under paragraph (6) of subsection (b) of Code Section 9-11-30 or subsection (a) of Code Section 9-11-31 to testify on behalf of a public or private corporation, a partnership or association, or a governmental agency which is a party may be used by an adverse party for any purpose;

(3) The deposition of a witness, whether or not a party, may be used by any party for any purpose if the court finds:

(A) That the witness is dead;

(B) That the witness is out of the county, unless it appears that the absence of the witness was procured by a party offering the deposition;

(C) That the witness is unable to attend or testify because of age, illness, infirmity, or imprisonment;

(D) That the party offering the deposition has been unable to procure the attendance of the witness by subpoena;

(E) That because of the nature of the business or occupation of the witness it is not possible to secure his personal attendance without manifest inconvenience to the public or third persons; or

(F) That the witness will be a member of the General Assembly and that the session of the General Assembly will conflict with the session of the court in which the case is to be tried;

(4) The deposition of a witness, whether or not a party, taken upon oral examination, may be used in the discretion of the trial judge, even though the witness is available to testify in person at the trial. The use of the deposition shall not be a ground for excluding the witness from testifying orally in open court; or

(5) If only part of a deposition is offered in evidence by a party, an adverse party may require him to introduce all of it which is relevant to the part introduced, and any party may introduce any other parts. Substitution of parties does not affect the right to use depositions previously taken; and, when an action in any court of the United States or of any state has been dismissed and another action involving the same subject matter is afterward brought between the same parties or their representatives or successors in interest, all depositions lawfully taken and duly filed in the former action may be used in the latter as if originally taken therefor.

(b) *Objections to admissibility*. Subject to paragraph (3) of subsection (d) of this Code section, objection may be made at the trial or hearing to receiving in evidence any deposition or part thereof for any reason which would require the exclusion of the evidence if the witness were then present and testifying.

(c) *Effect of taking or using depositions*. A party does not make a person his own witness for any purpose by taking his deposition. The introduction in evidence of the deposition or any part thereof for any purpose other than that of contradicting or impeaching the deponent makes the deponent the witness of the party

(a)] exists." Id. However, the circumstances of *Building Assocs.*, differ markedly from those here. In that case,

> [i]n response to the judge's inquiry as to whether there was any objection to the reading of the deposition, appellant's counsel raised the issue of the showing of unavailability. The transcript shows no argument and no showing of unavailability. The judge's next words were that he would admit the deposition.

Id. But here, Odom's counsel addressed the matter on the first day of trial, before jury selection, and stated that he was aware of Hughes's

---

introducing the deposition; but this shall not apply to the use by an adverse party of a deposition under paragraph (2) of subsection (a) of this Code section. At the trial or hearing any party may rebut any relevant evidence contained in a deposition whether introduced by him or by any other party.

(d) *Effect of errors and irregularities in depositions.*

(1) AS TO NOTICE. All errors and irregularities in the notice for taking a deposition are waived unless written objection is promptly served upon the party giving the notice.

(2) AS TO DISQUALIFICATION OF OFFICER. Objection to taking a deposition because of disqualification of the officer before whom it is to be taken is waived unless made before the taking of the deposition begins or as soon thereafter as the disqualification becomes known or could be discovered with reasonable diligence.

(3) AS TO TAKING OF DEPOSITION.

(A) Objections to the competency of a witness or to the competency, relevancy, or materiality of testimony are not waived by failure to make them before or during the taking of the deposition, unless the ground of the objection is one which might have been obviated or removed if presented at that time.

(B) Errors and irregularities occurring at the oral examination in the manner of taking the deposition, in the form of the questions or answers, in the oath or affirmation, or in the conduct of parties, and errors of any kind which might be obviated, removed, or cured if promptly presented are waived unless seasonable objection thereto is made at the taking of the deposition.

(C) Objections to the form of written questions submitted under Code Section 9-11-31 are waived unless served in writing upon the party propounding them within the time allowed for serving the succeeding cross or other questions and within five days after service of the last questions authorized.

(4) AS TO COMPLETION AND RETURN OF DEPOSITION. Errors and irregularities in the manner in which the testimony is transcribed or the deposition is prepared, signed, certified, sealed, endorsed, transmitted, filed, or otherwise dealt with by the officer under Code Sections 9-11-30 and 9-11-31 are waived unless a motion to suppress the deposition or some part thereof is made with reasonable promptness after such defect is, or with due diligence might have been, ascertained.

medical condition and "I just want something on the record about why she is not here." Counsel for the caveators stated in her place for the record, without objection, that she had spoken to Hughes a week earlier, inquired whether her health condition had improved so as to allow her to appear at trial, and that Hughes had said that she would not be able to attend. The court reserved ruling at the time, but after additional argument and before opening statements were made, ruled that the deposition could be introduced in lieu of live testimony, but that if that was done, Hughes would not be permitted to also testify from the stand. Accordingly, unlike *Building Assocs.*, the issue was properly addressed by the trial court.

Nor does Odom show that it was error for the court to allow the use of the deposition; counsel's statement in her place that a required statutory condition was met was a showing of unavailability, *Wright v. Millines*, 217 Ga. App. 464, 468 (7) (458 SE2d 488) (1995), and, before ruling, the trial court reviewed that portion of the deposition in which Hughes testified as to her medical condition.

3. Odom's motion for directed verdict on the issues of undue influence, lack of testamentary capacity, fraud, and monomania were denied, which she contends constitutes reversible error.

> [A] directed verdict is authorized only when "there is no conflict in the evidence as to any material issue and the evidence introduced, with all reasonable deductions therefrom, shall demand a particular verdict." OCGA § 9-11-50 (a); *Scoggins v. Strickland*, 265 Ga. 417, 418 (2) (456 SE2d 208) (1995).

*Dyer v. Souther*, 272 Ga. 263, 265 (2) (528 SE2d 242) (2000).

The evidence established a question for the jury on the issue of undue influence. "A will is invalid 'if anything destroys the testator's freedom of volition, such as . . . undue influence whereby the will of another is substituted for the wishes of the testator.' OCGA § 53-4-12." *Bean v. Wilson*, 293 Ga. 511, 512 (1) (661 SE2d 518) (2008).

> Undue influence may take many forms and may operate through diverse channels. There is no requirement that the undue influence be directly attributable to the propounder or to a single beneficiary. Although evidence which merely shows an opportunity to influence is not itself sufficient, a caveat based upon the ground of undue influence may be supported by a wide range of evidence, as such influence can seldom be shown except by circumstantial evidence.

*Bailey v. Edmundson*, 280 Ga. 528, 530 (1) (630 SE2d 396) (2006)

(Citations and punctuation omitted.) "In particular, the question of whether a will is the product of undue influence is generally for the factfinder." Id. at 529 (Citations and punctuation omitted.) And here, the evidence showed more than merely an opportunity for Odom to influence Testator. Prior to the office visit during which Testator signed the propounded will, all of Graham's communications regarding what the contents of that will were to be were with Odom; it was she alone who told Graham what Testator wanted in the will. See *Davison v. Hines*, 291 Ga. 434, 437-438 (1) (729 SE2d 330) (2012). Farless, who had some direct contact with Testator while preparing a draft will, drafted a final version that was not as beneficial to Odom as was the propounded will. Odom attempted to have Graham prepare the propounded will without Testator being aware that he was the drafter of it, even though Testator would be the drafter's client, and Odom expressed to McDonald the need to "legally engage" the caveators in an effort to reduce their financial resources for an expected will contest. The propounded will abandoned Testator's prior insistence that Odom repay her loan, and the evidence supported a conclusion that Odom had established a confidential relationship with Testator. See *Bailey,* supra at 531. Further, "the influence necessary to dominate a weak mind is less than that necessary to dominate a strong one," *Lewis v. Van Anda*, 282 Ga. 763, 767 (4) (653 SE2d 708) (2007), and there was evidence of Testator's diminished mental faculties, including that which indicated a lack of testamentary capacity.

Testator possessed the capacity to make a will if

[s]he understood that the will had the effect of disposing of [her] property at the time of [her] death, was capable of remembering generally what property was subject to disposition by will, was capable of remembering those persons related to [her], and was capable of expressing an intelligent scheme of disposition. [Cit.] A trial court must allow the jury to determine capacity where there is any genuine conflict of evidence regarding the testator's capacity. [Cits.] "Only the testimony favorable to Caveator[s] need be considered, because the sole question before us is whether there is sufficient evidence to sustain the jury's verdict. [Cit.]" [Cit.] Evidence of incapacity at a reasonable time prior to and subsequent to a will's execution creates an issue of fact as to capacity at the time of execution. [Cit.]

*Sullivan v. Sullivan*, 273 Ga. 130, 131 (1) (539 SE2d 120) (2000).

Nurses who cared for Testator in her home during the weeks surrounding the signing of the propounded will testified that: Testator was regularly confused and did not appear to understand her medical conditions, including her dementia; she could not retain information about her treatment and medications, forgetting instructions within two minutes; Testator's blood sugar levels were out of control and, despite a recommendation, Odom, with whom the nurses interacted, did not arrange for 24-hour care until some time after the signing of the propounded will. Odom told one nurse that Testator had not been regularly taking her memory medication for a month or more before the time the propounded will was signed. During the period that Odom was communicating with Farless and Graham regarding drafting a will for Testator, Odom repeatedly described Testator's problems understanding legal and financial matters. On a questionnaire Graham gave Testator the day she signed the propounded will, she replied "no" to the question, "[a]re your children Jeanette Louise Hughes, Robert Richard Burton, and Barbara Ann Odom"; Graham did not ask her to explain this answer, even though he knew it to be incorrect. On the questionnaire, she also left blank a question asking whether she understood that the will did not leave her assets to her children equally. The jury viewed a video recording of a meeting Testator had with Farless a month before signing the propounded will, and could make its own evaluation of Testator's capacity to understand legal issues, and her interaction with Odom. See *Patterson-Fowlkes v. Chancey*, 291 Ga. 601, 604 (732 SE2d 252) (2012). Although witnesses to the signing of the propounded will testified that they believed that Testator had testamentary capacity, the evidence authorized the jury to reach a different result. See *Burchard v. Corrington*, 287 Ga. 786, 788 (1) (700 SE2d 365) (2010).

As to monomania, there was evidence from which a jury could conclude that Testator suffered from a delusion that her relatives had "stolen" her house when the deed memorializing her transfer of the property to them showed that such was not the case. See *Ashford v. Van Horne*, 276 Ga. 636, 638 (2) (580 SE2d 201) (2003). Similarly, as to fraud, there was evidence from which the jury could conclude that Odom misrepresented to Testator the nature of the 2007 transfer of the real property, and the behavior of the caveators toward Testator's property.[6] See *McDaniel v. McDaniel*, 288 Ga. 711, 716-717 (2) (b) (707 SE2d 60) (2011).

---

[6] At the time she made her motion for directed verdict, Odom asserted to the court that fraud had not been pled with particularity. See OCGA § 9-11-9. However, "[t]he proper remedy for seeking more particularity is by motion for a more definite statement . . . at the pleading

*Judgment affirmed. All the Justices concur.*

DECIDED JULY 11, 2013.

*Mather D. Graham*, for appellant.
*Emily J. Matson*, for appellees.

---

stage or by the rules of discovery thereafter. [Cits.]" *Cochran v. McCollum*, 233 Ga. 104, 105 (210 SE2d 13) (1974). See also *Falanga v. Kirschner & Venker, P.C.*, 286 Ga. App. 92, 96-97 (1) (c) (648 SE2d 690) (2007).

